UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                Case No. 17-CR-20753
                                                Honorable Thomas L. Ludington

JOSEPH GERALD SMITH,

          Defendant.
_____/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE OR HOME CONFINEMENT WITH PREJUDICE AND DENYING MOTION FOR APPOINTMENT OF COUNSEL AS MOOT**

On February 1, 2018, Defendant Joseph Gerald Smith pled guilty to one count of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). ECF No. 20. On June 8, 2018, Defendant was sentenced to 77 months imprisonment. ECF No. 27. Defendant is currently housed at Federal Medical Center, Lexington ("FMC Lexington"), in Fayette County, Kentucky.

On July 9, 2020, Defendant filed a *pro se* motion for compassionate release based on his health condition and the spread of the COVID-19 virus. ECF No. 28. Plaintiff, the United States of America (the "Government"), filed a response on August 11, 2020. ECF No. 29. On August 17, 2020, Defendant sent a letter supplementing his motion for compassionate release with additional medical records and clarifying that he sought transfer to home confinement if a reduction to time-served was not granted. ECF No 30. Defendant also moved for the appointment of counsel. ECF No. 31. For the reasons stated below, Defendant's motions for compassionate release, home confinement, and the appoint of counsel will be denied with prejudice.

## I.

Defendant seeks a reduction of his sentence or a transfer to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).[1] The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

---

[1] To be clear, Defendant advances no independent legal authority for the request for home confinement. He specifically asks that he be "granted immediate Early Release and Home Confinement under the CARES ACT 18 U.S.C. 3582(c)(1)(A)." ECF No. 30 at PageID.148. To the extent that Defendant wants the Court to recommend home confinement to the BOP, "[d]esignation of an inmate's place of confinement, including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (internal quotation marks omitted). As a result, "the district court has no authority to grant relief under section 12003(b)(2)." *Id.* Accordingly, Defendant's requests for compassionate release and for transfer to home confinement will be analyzed together under 18 U.S.C. § 3582(c)(1)(A).

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Defendant states that he asked Warden Francisco J. Quintana for compassionate release or home confinement sometime prior to his motion. ECF No. 28 at PageID.116. The Warden denied his request on April 15, 2020 because his prior offenses apparently made him ineligible.[2] ECF No. 30 at PageID.150. The Government does not contest the issue of exhaustion. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[2] Defendant seems to argue that the Warden's denial was improper and that, as a matter of BOP policy, his prior offenses do not disqualify him from home confinement or compassionate release. *See* ECF No. 30 at PageID.147–52. It is unclear whether Defendant requests any independent relief on this basis. Regardless, as stated previously, the BOP enjoys absolute discretion with respect to designating a prisoner for home confinement. *Buford*, 2020 WL 4040705, at *6. Furthermore, this opinion is based on the merits of Defendant's motion, not the BOP's assessment of his eligibility.

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…

(5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying offense is for one count of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1(C). ECF. No. 20. Drug-related offenses are serious, and Defendant has served only a fraction of his 77-month sentence. Additionally, this was not his first drug-related offense. According to his Presentence Investigation Report, Defendant was convicted for cocaine-related offenses in 1990, 1993, and 2017. Furthermore, as explained in Section I.C.2. below, Defendant's lengthy criminal history, which includes multiple sex offenses, indicates that he would pose a danger to the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

## C.

The next inquiries to be resolved in addressing Defendant's motion for compassionate release are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

>  (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
>  (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant has failed to demonstrate both an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

**1.**

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
>  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>  (ii) The defendant is--
>
>   (I) suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.--

        (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant argues that his poor health condition, coupled with the risk of contracting COVID-19, qualifies as an "extraordinary and compelling" reason for release under subsection (A) of the policy statement commentary. ECF No. 39 at PageID.199–200. Subsection (A) requires that Defendant suffer from either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the custodial environment. U.S.S.G. § 1B1.13. The facts here are close, but Defendant has ultimately failed to satisfy subsection (A).

     Defendant is clearly at an elevated risk of developing the more serious symptoms of COVID-19. Defendant's medical records show that he suffers from coronary artery disease, ischemic cardiomyopathy, and hypertension. ECF No. 28 at PageID.125–28, 130–32. His Presentence Investigation Report indicates that he suffered a heart attack in 2011 which necessitated double bypass surgery. Defendant is also 54 years old, obese, and suffers from several

spinal conditions.[3] *Id.* Defendant is prescribed several medications to manage his health, and he takes them daily. ECF No. 28 at PageID.131.

The Government argues that Defendant is nevertheless ineligible under subsection (A) because he has already contracted COVID-19 and since recovered. ECF No. 29 at PageID.136. Defendant confirms that he was hospitalized from April 30 to June 24, 2020. ECF No. 30 at PageID.143, 146. During this time, Defendant apparently required the assistance of some type of respirator to breathe. *Id.* at PageID.143. Defendant further states that his health has "deteriorated" since his hospitalization, and that he fears he will contract the virus again given that "antibodies only last between 3 and 6 months." *Id.* at PageID.144.

Defendant's situation is not unprecedented. Many courts have held that where a defendant has contracted COVID-19 and recovered, his health condition is not extraordinary and compelling. *See, e.g.*, *United States v. Buford*, No. 05-80955, 2020 WL 4040705 (E.D. Mich. July 17, 2020) (50-year-old male with mild asthma, hypertension, mild kidney disease, and Type II diabetes); *United States v. Powers*, No. CR15-166 TSZ, 2020 WL 3605748 (W.D. Wash. July 2, 2020) (71-year-old male with hypertension and history of skin cancer); *United States v. Bland*, Case No. 18-20555 (E.D. Mich. May 28, 2020) (39-year-old male with Type II diabetes and hypertension); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696 (S.D.N.Y. May 18, 2020) (52-year-old male complaining of ongoing symptoms). However, in each of these cases, the defendant experienced only mild COVID-19 symptoms or no symptoms at all. Here, Defendant was hospitalized for nearly a month, during which time he required some sort of respirator to breathe.

---

[3] Defendant also describes himself as a "functional paraplegic." ECF No. 28 at PageID.112. An October 2019 letter from a cardiologist at the University of Kentucky confirms that Defendant "mostly use[es] a wheelchair for transportation," but also says that he can "walk in his ward" and the shower with no anginal symptoms. *Id.* at PageID.130.

Despite the apparent severity of Defendant's COVID-19 infection, Defendant has failed to show that he would be safer upon release. To begin, Defendant's position on antibodies is speculative, and courts have recently rejected similar arguments. *See Powers*, 2020 WL 3605748, at *3 ("[The defendant's] assertion [regarding reinfection] is entirely speculative and unsubstantiated by medical evidence, and it merely raises generalized concerns that do not support a finding of 'extraordinary and compelling reasons' for reducing defendant's sentence."). Furthermore, notwithstanding the issue of antibodies, Defendant has furnished no evidence that his risk of reinfection would be lower upon release. Defendant claims that FMC Lexington is a "petri dish" for the virus, but, as of September 3, 2020, FMC Lexington is reporting only a single case. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 2, 2020). By contrast, Isabella County, where Defendant's home is located, has recorded over 500 cases of COVID-19 since it began reporting cases—of which, 153 were recorded in the last week. *See Michigan Coronavirus Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2020/us/michigan-coronavirus-cases.html (last updated at Sept. 3, 2020). Defendant acknowledges that he is "constantly being monitored for his heart conditions," and, based on his prescription treatment and prompt hospitalization, the medical staff at FMC Lexington seem well-equipped to meet his needs. ECF No. 28 at PageID.115. Releasing Defendant from FMC Lexington would likely put him at even greater risk.

The other subsections provided in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) of the policy statement commentary because he is 54 years old. Additionally, he does not qualify under subsection (C) because has not alleged the death or incapacitation of a

spouse or caregiver of his minor children. Accordingly, Defendant has failed to demonstrate an extraordinary and compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors support the conclusion that Defendant would be a danger to others or the community if released. Defendant's Presentence Investigation Report reveals an expansive and alarming criminal history, which includes numerous convictions for theft or burglary (1989, 1990, 1991, 1993, 1998, and 1999), cocaine possession or delivery (1990, 1993, and 2017), and, more recently, sex offenses like indecent exposure and failure to register as a sex offender (2007, 2008, 2012, and 2015). Defendant was, in fact, on probation for a 2017 conviction

for delivery of a controlled substance when he was arrested and later convicted of the underlying offense here: distribution of cocaine base.

The details of each offense, while serious, are overshadowed by the pattern of habitual criminality they demonstrate. Though Defendant lacks a history of violence, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). Defendant's many property, drug, and sex offenses, each of which harmed the community, weigh heavily against him.[4] *See United States v. Gotti*, 219 F. Supp. 2d 296, 298 (E.D.N.Y.) (noting that "danger" under § 3142 generally "includes crimes that would harm the community"), *aff'd sub nom. United States v. Ciccone*, 312 F.3d 535 (2d Cir. 2002). Additionally, Defendant has failed to specify his likely living circumstances upon release, stating only that he wishes to "return to his home" and "be with [his] family."[5] ECF No. 28 at PageID.122–23. It thus remains unclear how Defendant's living circumstances would differ from those that preceded his conviction. Defendant's prior criminal conduct, and lack of a convincing reentry plan, strongly indicate that he would pose a danger to others or the community if released. Defendant's motion for compassionate release will be denied.

## II.

Defendant's remaining motion for the appointment of counsel is based solely on his motion for compassionate release or a transfer to home confinement. Accordingly, Defendant's motion for the appointment of counsel will be denied as moot.

---

[4] Defendant's limited mobility does not alter the analysis here. Presumably, his drug and sex offenses did not require much mobility, and, according to his Presentence Investigation Report, Defendant was collecting social security disability benefits at the time of the underlying offense.

[5] Defendant briefly mentions that he has submitted a reentry plan "showing that he is ready and prepared [to return] to his home," but, as of September 3, 2020, no such document has been received. ECF No. 28 at PageID.123. The Government states that Defendant intends to reside with his son upon release but does not cite to any filing. Defendant's Presentence Investigation Report identifies two sons, both of which apparently live in Mount Pleasant, MI, where Defendant's home is located.

- 11 -

## III.

Accordingly, it is **ORDERED** that Defendant Joseph Gerald Smith's motion for compassionate release or transfer to home confinement, ECF Nos. 28 and 30, is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's motion for appointment of counsel, ECF No. 31, is **DENIED AS MOOT**.

Dated: September 10, 2020        s/Thomas L. Ludington
                                 THOMAS L. LUDINGTON
                                 United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Joseph Gerald Smith** #56224-039, LEXINGTON FEDERAL MEDICAL CENTER, Inmate Mail/Parcels, P.O. BOX 14500, LEXINGTON, KY 40512 by first class U.S. mail on September 10, 2020.

                                 s/Kelly Winslow
                                 KELLY WINSLOW, Case Manager